UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SUKHWINDER SINGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 1:08-cv-328-SEB-DML |
| vs. ) | |
| ) | |
| INDIANA STATE POLICE AND ) | |
| TIMOTHY JAMES, ) | |
| ) | |
| Defendants. ) | |

**ORDER ADDRESSING MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendants' Indiana State Police and Timothy James ("James") joint Motion for Summary Judgment [Docket No. 29], filed on December 10, 2008. Plaintiff, Sukhwinder Singh ("Singh"), brought this action under Title 42, United States Code § 1983 claiming that Defendants violated his rights under the Fourth and Fourteenth Amendments to the Constitution by using excessive force in arresting him and by wrongfully suspending his driver's license without due process. He has also brought a state law battery claim against Defendants under the Indiana Tort Claims Act ("ITCA"), Ind. Code § 34-13-3-1. In their Motion for Summary Judgment, Defendants contend that they are entitled to immunity and that Plaintiff's claims are insufficient as a matter of law. For the reasons detailed in this entry, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.

### *Factual Background*

Sukhwinder Singh is a resident of Indiana. At all times relevant to this case, Timothy James was a road patrol trooper with the Indiana State Police, an agency of the State of Indiana.

On February 17, 2006, James, who was off duty and wearing a track suit at the time, was traveling south on Bridgeport Road in Indianapolis, Indiana, when he observed a car disregard a stop sign at the intersection of Bridgeport Road and Scotland Drive. James activated his emergency lights, pulled directly behind the car and pursued it south on Bridgeport Road. When the driver of the car, Singh, disregarded a second stop sign, James activated his siren. James pursued Singh for a short time, during which pursuit Singh disregarded a third stop sign.

Although the parties do not dispute the facts surrounding this encounter, they disagree almost entirely as to what occurred after Singh finally responded to James's signals and stopped his car. Singh asserts that he remained in his seat in the car and that James said nothing to him. Then, according to Singh, James pulled him from the car by his shirt, threw him onto the hood of the police car, hit him repeatedly in the face with his fist, kneed him in the chest and handcuffed him. Singh also contends that James hit him while he was handcuffed and dragged him to an adjacent driveway. Pl.'s Response at 3-5. Moreover, Singh has testified that, during this altercation, although he attempted to shield himself from James's blows, he never resisted James nor did he attempt to flee. Id. at 5. As a result of the force used by James, the orbit bone of Singh's eye socket was

broken.

Defendants tell a different story; they say Singh "opened his driver's side door and traveled toward the rear of his vehicle" before James reached Singh's car, despite the fact that James had ordered him to remain seated inside the car. Def.'s Br. in Supp. at 3. James testified that, because he believed that Singh was attempting to escape, he tackled Singh, commanded him to stop resisting and performed "defensive measures . . . consistent with his experience and training" in order to subdue him. Def.'s Br. in Supp. at 3. James further contends that he "noticed that Singh had bloodshot eyes, smelled of alcohol, and slurred his speech." Def.'s Br. in Supp. at 3. James states that he was able to handcuff Singh only with the help of a bystander, who retrieved the set of handcuffs and delivered them to James.

Other Indiana State Police personnel along with Marion County Sheriff's officers arrived shortly after James had handcuffed Singh and moved him to the nearby driveway. At this point, James told Singh that he was under arrest for resisting law enforcement with a vehicle, resisting law enforcement, operating a motor vehicle while intoxicated and public intoxication.

After the arrest, James completed a probable cause affidavit in support of the charges against Singh in which he stated that he had advised Singh of the Indiana Implied Consent Law, Ind. Code § 9-30-6-1, and that Singh had refused to submit to a chemical test. However, in subsequent deposition testimony, James conceded that he had not informed

3

Singh of the Implied Consent law and that Singh had not refused a chemical test.[1] Indiana law mandates the suspension of an individual's driver's license if the person fails to comply with the Implied Consent Law. Ind. Code § 9-30-6-9(e). Therefore, as a result of James's false post-arrest statements, Singh's driver's license was suspended. Because no administrative remedy is provided under the statute, Singh petitioned the Marion Superior Court for judicial review of his license suspension, and eventually secured its reinstatement.

Thereafter, on September 28, 2006, Singh pleaded guilty to the charge of resisting law enforcement by fleeing in a vehicle. All of the charges relating to whether Singh resisted or fled after he exited his car were dismissed.

## *Legal Analysis*

### *I. Standard of Review*

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty

---

[1] "Q: Tell me why you checked the box next to 'I advised him of the implied consent law.' A: Being that we were in a fight, scuffle, tangle, and I guess on my assumption that he wasn't going to comply with a breath test, so that's why I checked that. Q: And then the subpart about 'refused a chemical test,' did Mr. Singh ever refuse a chemical test? A: No. That was based on my statement, what I just said." James Dep. at 81-82.

Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Thus, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enter., Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to

satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

## *II. Singh's § 1983 Claims*

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Section 1983 is not itself a source of substantive rights; instead, it is a means for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989). Accordingly, the initial step in any § 1983 action is to identify the specific constitutional right which was allegedly violated. Id. at 394; Kernats v. O'Sullivan, 35 F.3d 1171, 1175 (7th Cir. 1994). Singh's first § 1983 claim rests on an excessive force allegation, which is properly vindicated under § 1983 because it arises out of the Fourth Amendment's prohibition against unreasonable searches and seizures. See Potts v. City of Lafayette, Ind., 121 F.3d 1106 (7th Cir. 1997) (holding that all state issued searches and seizures fall within the scope of the Fourth Amendment). Singh also brings a claim for wrongful deprivation of property, which arises out of the procedural due process guarantees of the Fourteenth Amendment, and thus is also properly

actionable under § 1983.[2]

## A. *Excessive Force*

In order to determine whether the force James used in arresting Singh was objectively reasonable under the Fourth Amendment, we balance the nature and quality of the intrusion of Singh's privacy rights against the government interests at stake. Graham v. Connor, 490 U.S. 386, 396 (1989); Abdullahi v. City of Madison, 423 F.3d 763, 768 (7th Cir. 2005).

The right to use physical coercion "is inherent in making an arrest," Bowden v. Town of Speedway, Indiana, 539 F.Supp.2d 1092, 1106 (S.D. Ind. 2008) (citing Graham, 490 U.S. at 396), and the "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Tibbs v. City of Chicago, 469 F.3d 661, 665 (7th Cir. 2006) (quoting Graham, 490 U.S. at 394). Thus, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force

---

[2]These claims are properly brought only against James individually, as Singh has not alleged facts that would support § 1983 liability against the Indiana State Police. A "local government may not be held liable for constitutional violations by its employees on a theory of respondeat superior . . . . Instead, a plaintiff seeking damages from the local government under section 1983 must allege and prove that his injuries were caused by a municipal policy, custom, or practice that foreseeably caused the type of constitutional violation that the plaintiff suffered." Ziemer v. Kassel, 2008 WL 323392 (S.D. Ind. Feb. 5, 2008) (citing Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694-95 (1978)).

that is necessary in a particular situation." Graham, 490 U.S. at 396-97. The inquiry is dependent on the facts of the case, although "[t]he reasonableness of force is a legal issue, as juries do not determine what limits the Constitution places on official conduct." Wasko v. Difilippo, 2007 WL 869211 (N.D. Ind. 2007) (citing Bell v. Irwin, 321 F.3d 637, 640 (7th Cir. 2003)).

In the case at bar, Singh contends that James dragged him from his car, flung him onto the hood of the patrol car, threw him to the ground, repeatedly struck him (before and after handcuffing him), kneed him, and broke the orbit bone in his eye socket. James rejoins that the force he utilized consisted of nothing more than "defensive maneuvers," which he was trained to use in order to protect himself and prevent resistance and flight on the part of Singh. James also urges the Court to give significant weight to "the surrounding facts," which include that he was subduing a suspect whom he had witnessed disregarding numerous stop signs, and whom James insists was attempting to flee arrest. Def.'s Br. in Supp. at 7. In response, Singh claims that he did not continue his attempts to flee once he had stopped his vehicle. Indeed, Defendants offer no evidence of Singh's post-stop flight or resistance beyond the fact of his plea of guilty to the charge of resisting arrest.[3]

Resolving this dispute in the light most favorable to Singh, as we must, Anderson, 477 U.S. at 248, we conclude that a reasonable jury could determine that excessive force

---

[3] Singh pleaded guilty only to resisting arrest while in his vehicle. See Plea Agreement (Def.'s Ex. D). This is not evidence of any attempt to flee or resist after he exited his vehicle.

8

had been used by James. See, e.g. Sallenger v. Oakes, 473 F.3d 731, 740 (7th Cir. 2007). We do not credit nor discredit Singh's version nor do we weigh the facts in controversy in so holding. We simply note that, based on the record before us, there is evidence that, if believed, would allow a jury so to conclude. That the parties' accounts of what happened after Singh stopped his car so radically diverge makes this case ineligible for summary judgment. See Chelios v. Heavener, 520 F.3d 678, 688 (7th Cir. 2008). Defendants' Motion for Summary Judgment shall therefore be denied on this claim, unless James is entitled to qualified immunity, which issue we discuss separately below.

*B. Deprivation of Property*

Singh also contends that he was wrongfully deprived of a protected property interest in violation of the Due Process Clause of the Fourteenth Amendment. In order to state a procedural due process claim, a plaintiff must establish two elements: first, that he was deprived of the protected interest; and second, that there were "insufficient procedural protections surrounding that deprivation." Michalowicz v. Village of Bedford Park, 528 F.3d 530, 534 (7th Cir. 2008). In other words,

> the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.* The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.

Zinermon v. Burch, 494 U.S. 113, 125-26 (1990) (emphasis in original).

9

Singh's deprivation claim rests on the fact that James's false statements on Singh's probable cause affidavit led to the suspension of Singh's driver's license. It is well settled that when a state licenses individuals to drive cars, those individuals have a property interest in their licenses, which implicates the protections of the Due Process Clause. Town of Castle Rock v. Gonzalez, 545 U.S. 745, 790 (2005); Mackey v. Montrym, 443 U.S. 1, 12 (1979); Bell v. Burson, 402 U.S. 535, 539 (1971). The Supreme Court further has held that a person's means of transportation is entitled to heightened significance as a property interest. Bell, 402 U.S. at 539. Thus, the first inquiry - whether Singh was deprived of a protected interested - is easily answered in the affirmative.

The thornier issue is whether this deprivation occurred without due process. Singh was entitled to no hearing prior to his license suspension to challenge whether that suspension was proper. The applicable statute in this case expressly exempts chemical test refusal suspensions from adjudication under the Administrative Orders and Procedures Act. Ind. Code § 9-30-6-9(e). Although pre-deprivation remedies are often preferable in the due process context, adequate post-deprivation procedures may satisfy due process requirements "where a State must act quickly, or where it would be impractical to provide pre-deprivation process." Gilbert v. Homar, 520 U.S. 924, 930 (1997). Summary driver's license suspensions, when justified by the need to protect the public from drunk driving, qualify as situations in which a State may act without a predeprivation hearing. Mackey, 443 U.S. at 17. However, "[o]nce suspension has been imposed, the [license holder's] interest in a speedy resolution of the controversy becomes

paramount," and an early and reliable determination of the facts is essential. Barry v. Barchi, 443 U.S. 55, 66 (1979). Defendants contend that such a "state-law procedure *exist[ed]*," Michalowicz, 528 F.3d at 534, in this case because the Marion Superior Court reinstated Singh's license at a hearing on May 1, 2006.[4]

To determine whether the license reinstatement Singh was granted constituted adequate process, we follow the now familiar calculus of Mathews v. Eldridge, 424 U.S. 319 (1976), directing courts to consider the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail.

Mathews, 424 U.S. at 335.

The first two factors redound clearly in Singh's favor: as previously noted, Singh's interest in possessing and using his driver's license is significant, Bell, 402 U.S. at 539; and the risk of an erroneous deprivation is obvious, given that Singh's license was suspended as a direct result of James's false statements - a problem not rectified for more than two months. No evidence has been adduced relating to the burdens that arguably would result from the implementation of more rigorous safeguards to prevent this sort of

---

[4]Defendants posit, in the alternative, a hypothetical procedure they claim Singh could have utilized. According to Defendants, Singh could have sued James under the Indiana law for intentional false reporting. Defendants do not explain how this would have resulted in a quick adjudication of his license suspension; they only assert that it would have provided Singh with a separate remedy. We doubt that recourse to this option would have resulted in a speedy resolution.

11

error (although Defendants have summarily claimed that such burdens would be too great).

Finally, obviously, the governmental interest is no less than Singh's in terms of its importance. In Mackey, as in our case, the state automatically suspended the licenses of those who refused to take breathalyzer tests. Because the protection of the public from potentially dangerous driving qualified as the governmental interest justifying suspension, the Court held that post-deprivation hearings satisfied due process requirements. Mackey, 443 U.S. at 17. Mackey is easily distinguished from the present case, however, because the applicable state law in that case provided for notice and a quick post-deprivation hearing. Id. at 7. These protections are in stark contrast to the situation here, given that Indiana law expressly forecloses an administrative hearing, requiring Singh to initiate a review in criminal court some months later to challenge his license suspension.

Furthermore, unlike the plaintiff in Mackey, Singh was given no notice as to how to go about challenging his suspension. Due process requires that an individual be provided with meaningful notice, Goldberg v. Kelly, 397 U.S. 254, 267 (1970), which means that it must state the reasons for the deprivation as well as the process by which the deprivation can be challenged. Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1 (1978). Here, Defendants have produced no evidence to establish that Singh was informed of the way(s) in which he could challenge the suspension of his license.

Although States have "great leeway in adopting summary procedures to protect public health and safety," Mackey, 443 U.S. at 17, the facts here, which include Singh's

significant interest in transportation, which he contends is linked to his livelihood; the duration of the deprivation; the lack of any required notice linked to a prompt post-deprivation hearing; and the high risk of erroneous deprivation in this case, taken together, outweigh Defendants' interests in ensuring public safety by the immediate removal of driving privileges for suspected drunk drivers, at least to the extent that Singh's due process claim can survive summary judgment.

For all of these reasons, Defendants' Motion for Summary Judgment shall be denied as to Plaintiff's Fourteenth Amendment claim, again assuming that Defendants are not entitled to qualified immunity.

*C. Qualified Immunity*

Defendants have invoked a qualified immunity defense to Singh's federal claims as an alternative basis for summary judgment. The doctrine of qualified immunity protects government officials from liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights reasonably knowable at the time of the conduct. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Because qualified immunity is an *immunity from suit* rather than a mere defense to liability, it is properly assessed at the summary judgment stage. See Purtell v. Mason, 527 F.3d 615, 621 (7th Cir. 2008).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court established a two-step method for lower courts to apply in determining qualified immunity. Under Saucier, a

13

court must first decide whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and if the plaintiff satisfies this first step, the court next decides whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. Recently, the Supreme Court reconsidered this heretofore mandatory analytical sequence, concluding that, although the Saucier sequence is often appropriate, a court is permitted to exercise discretion in deciding which prong of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case. Pearson v. Callahan, 129 S.Ct. 808 (2009). Having previously determined in this ruling that Singh has succeeded in mustering sufficient facts to make out violations of his constitutional rights, we shall consider the qualified immunity issue in the familiar Saucier sequence.

Whether Defendants violated a constitutional right that was "clearly established" at the time of the alleged misconduct is an analysis that "must be undertaken in light of the specific context of the case, not as a broad general proposition." Purtell, 527 F.3d at 621. Here, two constitutional rights are at issue: the right to be free from excessive force in the specific context of Singh's arrest; and the right to be free from the prolonged suspension of one's driver's license, due to false statements contained within the probable cause affidavit.

As previously decided, a reasonable jury could conclude based on the facts adduced here that James used excessive force in dragging Singh from his car, striking him repeatedly, handcuffing him roughly and striking him after handcuffing him, thereby

14

causing him to suffer a broken bone in his eye socket.  Defendants have provided no evidence from which the Court could conclude that Singh posed a serious threat to James or anyone else at the time James engaged in this conduct.  Nor have Defendants provided any legal basis giving rise to an inference that James's actions would have been constitutionally acceptable.  To the contrary, such force, when used in a nonthreatening context, has been held to be constitutionally unreasonable.  See, e.g. Sallenger v. Oakes, 473 F.3d 731, 742 (7th Cir. 2007).  Thus, James is not entitled to qualified immunity on Singh's excessive force claim.  See Clash v. Beatty, 77 F.3d 1045, 1048 (7th Cir. 1996) (holding that showing force that was "plainly excessive" is sufficient to meet the "clearly established" requirement).

Qualified immunity is similarly unavailable on Singh's § 1983 due process claim.  James concedes that he "erroneously marked the boxes on the form," Def.'s Br. in Supp. at 9, and that this conduct resulted in the suspension of Singh's driver's license.  Singh's right to be free from this conduct, characterized as it was by material falsehoods and errors, was clearly established as a matter of law.  See Ind. Code § 35-44-2-2 (establishing false reporting as a crime under Indiana law).  Thus, James is not entitled to the protections of qualified immunity regarding Singh's due process claim as well.

### III. Singh's State Law Claim

Singh has asserted a claim against James and the Indiana State Police under the Indiana Tort Claims Act.  Defendants interpose immunity defenses to this claim as well,

15

seeking individual immunity for James and governmental immunity for the Indiana State Police. Under the law enforcement exception of the ITCA, individual government employees acting within the scope of their employment are immune from liability: "a plaintiff cannot sue a governmental employee personally if the complaint, on its face, alleges that the employee's acts leading to the claim occurred within the scope of his employment." City of Gary v. Conat, 810 N.E.2d 1112, 1118 (Ind.Ct.App. 2004); see also Ind. Code § 34-13-3-5(b) ("A lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally."). Singh concedes that, "because his lawsuit alleges that Trooper James acted within the scope of his employment, he is barred by the [ITCA] from" suing James in his individual capacity. Pl.'s Response at 23. Accordingly, we hold that James is entitled to immunity as to any individual liability he might otherwise face under Singh's ITCA claim.

The Indiana State Police, however, is not protected by such immunity.[5] The ITCA exempts the Indiana State Police from liability for a loss resulting from the "adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34-13-3-3(8); see also Ziemer v. Kassel, 2008 WL 323392 (S.D. Ind. Feb. 5, 2008).

---

[5]Defendants' governmental immunity argument is little more than an attempt to allow the Indiana State Police to piggyback on to James's entitlement to personal immunity: "Trooper James cannot be sued in his individual capacity. Accordingly, the claims against Trooper James and the Indiana State Police must be dismissed." Def.'s Br. in Supp. at 14.

16

Indiana law is unclear as to whether law enforcement immunity under the ITCA applies to claims for injuries resulting from the use of excessive force during a detention or arrest. See Vandewalle v. Moffa, 2009 WL 631244 (N.D. Ind. Mar. 10, 2009); Rising Moore v. Wilson, 2005 WL 1607187, *12 (S.D.Ind. July 7, 2005). However, this court has routinely applied the holding of the Indiana Supreme Court in Kemezy v. Peters, 622 N.E.2d 1296 (Ind. 1993), that the law enforcement exception does not apply to the use of excessive force by a police officer. E.g., Ziemer, 2008 WL 323392, at *2; Fidler v. City of Indianapolis, 428 F.Supp.2d 857, 866-67 (S.D. Ind. 2006); Estate of O'Bruan v. Town of Sellersburg, 2004 WL 1234215, at *23-24 (S.D. Ind. May 20, 2004); Rising-Moore, 2005 WL 1607187, at *12-13 (following Kemezy after careful review of Indiana decisions); contra Thomas v. City of Fort Wayne, 2008 WL 282348, at *9-10 (N.D. Ind. Jan. 31, 2008); City of Anderson v. Davis, 743 N.E.2d 359, 366 n.4 (Ind.Ct.App. 2001). As our colleague, Judge Hamilton, recently recognized, "One should not conclude too readily that the Indiana legislature intended to leave Indiana citizens without a remedy under state law if police officers inflict unreasonable and excessive force upon them." Fidler, 428 F.Supp.2d at 867. Thus, although the ITCA clearly provides immunity for an individual officer accused of applying unreasonable force, Singh may "still pursue his state tort claims against the [Indiana State Police] stemming from the . . . alleged use of excessive force." Id. at 866.

Accordingly, Defendants' Motion for Summary Judgment is granted insofar as it seeks to extinguish Singh's state-law claim against James individually, but the Motion is

17

denied as to Singh's claim against the Indiana State Police.

## VI. *Conclusion*

Having concluded that a reasonable jury could find in favor of Singh on his excessive force and due process claims brought pursuant to § 1983, and that James is not entitled to qualified immunity, we hold that Singh may proceed on these claims. We hold further that James is entitled to immunity as to Singh's ITCA claim against him individually in his personal capacity, but that Singh's claim may proceed against the Indiana State Police on the ITCA claim. Accordingly, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

Date: 06/02/2009

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Donald G. Banta
INDIANA OFFICE OF THE ATTORNEY GENERAL
donald.banta@atg.in.gov

David Robert Brimm
WAPLES & HANGER
dbrimm@wapleshanger.com

Akia Haynes
INDIANA OFFICE OF THE ATTORNEY GENERAL
akia.haynes@atg.in.gov

Cory Christian Voight
INDIANA OFFICE OF THE ATTORNEY GENERAL
cory.voight@atg.in.gov

Richard A. Waples
WAPLES & HANGER
richwaples@aol.com

19